# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRADLEY GOOD,** *and all others similarly situated*, | : : : | |
| *Plaintiff* | : : | CIVIL ACTION |
| v. | : : : | NO. 19-0059 |
| **CAVALRY PORTFOLIO SERVICES, LLC,** *et al.*, | : : : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                        NOVEMBER 13, 2019

## MEMORANDUM OPINION

**INTRODUCTION**

      Before this Court is a motion to compel arbitration filed by Defendants Cavalry Portfolio Services, LLC ("Defendant Cavalry PS") and Cavalry SPV I, LLC ("Defendant Cavalry SPV") (collectively "Defendants"), pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-14. [ECF 16]. Plaintiff Bradley Good ("Plaintiff") has opposed the motion. [ECF 20]. The primary issue of whether to compel arbitration has been fully briefed and is ripe for disposition.[1] For the reasons set forth below, Defendants' motion to compel arbitration is granted.

**BACKGROUND**

      In the underlying complaint, Plaintiff asserts claims against Defendants for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, arising out of a letter sent to Plaintiff by Defendant Cavalry PS on behalf of Defendant Cavalry SPV, seeking to recover a debt on a defaulted credit card obligation originally owed to Citibank, N.A. ("Citibank"). Defendants have moved to compel arbitration of these claims pursuant to an arbitration provision (the "Arbitration Provision") contained in the governing credit card

---

[1]    In adjudicating the underlying motion, this Court has also considered Defendants' reply. [ECF 23].

agreement (collectively, the "Card Agreement"). Defendants' motion to compel arbitration is based on the following pertinent facts.[2]

On August 7, 2012, a Citibank credit card application was completed in Plaintiff's name, Bradley D. Good, with a Social Security number ending in 0250 and an address of 342 W. Second Street, Media, Pennsylvania, 19063. On that same day, Citibank issued an account in Plaintiff's name (the "Account"), with the above corresponding Social Security number and address. Plaintiff received the physical credit card associated with the Account and made purchases. The first purchase Plaintiff made was posted on August 14, 2012, seven days after the opening of the Account.

The Account was initially governed by a credit card agreement and fact sheet (the "2011 Card Agreement). (ECF 6-2, Ex. 6, pp. 48-53). The 2011 Card Agreement provided that it would become binding on Plaintiff unless he closed the Account within thirty days and the Account had not been used. (*Id*. at 48). The 2011 Card Agreement contained an arbitration provision governing enforcement of the parties' legal rights. (*Id*. at 51). It also advised that Citibank could change the terms governing the Account at any time with advance written notice and that the cardholder had a right to opt out. (*Id*.).

Sometime in 2013, the terms of the 2011 Card Agreement were amended by advance, written notice (the "2013 Card Agreement"). (ECF 6-2, Ex. 7, pp. 55-73). Like the 2011 Card Agreement, the 2013 Card Agreement contained an identical arbitration provision (the

---

[2] The facts set forth herein are drawn from the complaint and the business records attached to the parties' briefs. For purposes of this motion, this Court will construe the facts and evidence in the light most favorable to the non-movant, here, Plaintiff.

"Arbitration Provision") governing the enforcement of the parties' legal rights. (*Id*. at 65).[3] The Arbitration Provision provided the following:

> **ARBITRATION**
> **PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**
>
> **Agreement to Arbitrate**: Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> **Claims Covered**
>
> **What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (nonclass, non-representative) basis, and the arbitrator may award relief only on an individual (nonclass, non-representative) basis.
>
> **Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a coapplicant, authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.
>
> \* \* \*

---

[3] The 2013 Card Agreement also expressly provides that "the law of South Dakota . . . governs the terms and enforcement of this Agreement." (ECF 16-2, Ex. 7, at CPS/SPV0069).

3

> **Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").
>
> * * *
>
> **What about debt collections?** We and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee. We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including in a proceeding to collect a debt. You may seek arbitration on an individual basis of any Claim asserted against you, including in a proceeding to collect a debt.

Plaintiff's last payment on the Account was posted on January 8, 2013. Citibank closed the defaulted Account on September 11, 2013. On March 31, 2016, Citibank sold all right, title, and interest to a pool of defaulted credit card accounts, including Plaintiff's Account, to Defendant Cavalry SPV.[4] Defendant Cavalry SPV then assigned the Account to Defendant Cavalry PS for servicing and collection. On August 28, 2018, Defendant Cavalry PS sent Plaintiff a collection letter, on behalf of Defendant Cavalry SPV, seeking recovery of amounts owed on Plaintiff's defaulted Account. Plaintiff contends that the substance of the collection letter violates the FDCPA.

**LEGAL STANDARD**

When addressing a motion to compel arbitration, the Court must first determine which standard of review to apply: either the motion to dismiss standard under Federal Rule of Civil Procedure ("Rule") 12, or the motion for summary judgment standard under Rule 56. *Guidotti v. Legal Helpers Debt Resolution, LLC.*, 716 F.3d 764, 771-72 (3d Cir. 2013). "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or

---

[4] Though not presenting any evidence to the contrary, as discussed more fully below, Plaintiff contends that Defendants have failed to provide sufficient admissible evidence to demonstrate the sale/assignment of Plaintiff's Account to Defendant Cavalry SPV.

4

documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773-74 (internal citations omitted). Where arbitrability is not so apparent, "the issue should be judged under the Rule 56 standard." *Id.* Here, the issue of arbitrability is not apparent on the face of the complaint because Plaintiff neither references nor attaches the 2013 Card Agreement, which includes the Arbitration Provision, in his complaint. Thus, this Court finds that the Rule 56 summary judgment standard is applicable.[5]

When applying a Rule 56 standard, a court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A fact is "material" if its existence or non-existence may affect the outcome of litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In applying a Rule 56 standard, "the court must draw all reasonable inferences in favor of the nonmoving party." *Guidotti*, 716 F.3d at 772.

The moving party has the burden of showing the court "the absence of a genuine issue of material fact" by showing that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322-23. The non-moving party must then rebut the claim by "citing to particular parts of materials in the record, including, depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R.

---

[5] Here, the parties have participated in and exchanged some quantity of discovery, such that the Court has a sufficient factual record before it with regard to the issue of arbitration. Therefore, additional discovery is not warranted and the underlying motion to compel arbitration will be decided under the summary judgment standard.

5

Civ. P. 56(c)(1)(A-B). The non-moving party must show more than "some metaphysical doubt as to the material facts," rather, the non-moving party must "go beyond the pleadings" and "show that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 476 U.S. 574, 586 (1986); *see also Celotex*, 477 U.S. at 324.

**DISCUSSION**

As noted, Defendants move to compel arbitration of this matter based on the Arbitration Provision contained in the 2013 Card Agreement between Plaintiff and Citibank. Defendants contend that the 2013 Card Agreement and Plaintiff's Account were assigned to Defendant Cavalry SPV. In opposing arbitration, Plaintiff makes three arguments: (1) Defendants have failed to show that Plaintiff entered into the 2013 Card Agreement containing the Arbitration Provision; (2) Defendants have not shown, with admissible evidence, that Plaintiff's Account, and all concomitant rights and obligations, including the Arbitration Provision, were sold and/or assigned to Defendant Cavalry SPV; and (3) Defendant Cavalry PS lacks standing to enforce the Arbitration Provision. This Court is unpersuaded by Plaintiff's arguments.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, "establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000). Section 2, the primary substantive provision of the FAA, provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). This provision "reflects the fundamental principle that arbitration is a matter of contract." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Further, § 2 "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* (internal citations omitted).

Under the FAA:

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* In so doing, the court "must resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25). If the court determines that the case must be arbitrated, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Before compelling arbitration, therefore, a court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).[6] Throughout the inquiry, there is a presumption in favor of arbitrability. *Id.* In determining whether a valid arbitration agreement exists, courts look to ordinary state law principles of contract formation. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009); *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003). Thus, "generally

---

[6] Plaintiff does not argue that his underlying claim falls outside the scope of the Arbitration Provision.

7

applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Casarotto*, 517 U.S. at 687; *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999).

### *Formation of the Arbitration Agreement*

Plaintiff argues that Defendants have failed to present sufficient evidence to show that he entered into the purported agreement to arbitrate. Specifically, Plaintiff contends that Defendants have failed to provide evidence that either of the card agreements containing the Arbitration Provision was mailed to him. Plaintiff's argument is belied by the record.

To meet their burden, Defendants provided the deposition testimony of Brian Billings, an assistant vice president for Citibank, N.A. (ECF 23-2). Mr. Billings testified that Citibank has a policy by which it provides copies of applicable terms and conditions, as well as amendments to such terms, to all account holders, and that Citibank maintains a record of instances where the terms and conditions, or amendments thereto, were undeliverable or otherwise returned to Citibank. (*Id.* at pp. 9-12, 15-17). Mr. Billings further testified that the business records he reviewed in relation to Plaintiff's Account reveal that the 2011 Card Agreement and the 2013 Card Agreement were sent to Plaintiff and that neither agreement was undeliverable or returned. (*Id.*). Notably, Plaintiff does not provide any evidence, including any affidavit, to show that he did not receive either of the card agreements. Defendants' evidence, which Plaintiff does not contest, is sufficient to show that Plaintiff was mailed and received a copy of the arbitration agreements.

In addition, it is undisputed that Plaintiff used the Account shortly after it was opened. Under applicable South Dakota law,[7] "[t]he use of an accepted credit card . . . creates a binding

---

[7] Both parties agree that South Dakota law applies, in light of the choice-of-law provision contained in the Card Agreements.

8

contract between the card holder and the card issuer." S.D. Codified Laws § 54-11-9. Here, it is undisputed that Plaintiff used the credit card and made purchases on the Account. As such, Plaintiff's argument challenging the existence of a binding agreement to which he was a party is without merit.

### *Sale and/or Assignment of Plaintiff's Account and Right to Compel Arbitration to Defendant Cavalry SPV*

Plaintiff next argues that Defendants have not shown with sufficient admissible evidence that his Citibank Account, and/or the related right to compel arbitration with respect to that Account, was sold/assigned to Defendant Cavalry SPV. Specifically, Plaintiff contends that the evidence submitted amounts to mere inadmissible hearsay, which falls short of demonstrating an assignment of Plaintiff's account to Defendant SPV. This Court disagrees.

To demonstrate the sale and assignment of Plaintiff's account to Defendant SPV, Defendants have proffered, *inter alia*, two sworn declarations/affidavits, both of which attest, based on the affiants' knowledge and review of regularly kept business records, to the sale/assignment of Plaintiff's Account to Defendant Cavalry SPV; *to wit*: (1) the declaration of Roxanne Jackson, an authorized representative and custodian of records for Defendants; and (2) the affidavit of Christina Robinette, an authorized representative and custodian of records for Citibank, N.A. (ECF 16-2). Plaintiff contends these declarations/affidavits are inadmissible hearsay. Plaintiff is wrong.

Pursuant to Federal Rule of Evidence 803(6), the sworn statements of these two witnesses, and the business records attached thereto, are admissible. Specifically, Rule 803(6), known as the business records exception, permits admission of documents containing hearsay, provided that Defendants show that:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

In her declaration, Ms. Jackson states that she was an authorized representative of Defendants and had access to and had reviewed the business records created and maintained by Defendants in their regular course of business. (ECF 16-2, Ex. B). The business records she reviewed included documents evidencing Defendant Cavalry SPV's purchase of Plaintiff's Account from Citibank on March 31, 2016. (*Id.*). Included with her declaration was a copy of the Bill of Sale and Assignment between Citibank and Defendant Cavalry SPV, reflecting the sale of "Accounts described in Exhibit 1 and the final electronic file." (ECF 16-2, Ex. 1). Also attached was an extrapolation of the data received from Citibank related to the Account, showing Plaintiff's Account as one of the accounts assigned. (ECF 16-2, Ex. 3). In her affidavit, Ms. Robinette unequivocally states, on behalf of Citibank, that based upon her review of Citibank's business records, which were created and maintained by Citibank in the regular course of business, Plaintiff's Account was sold to Defendant Cavalry SPV on March 31, 2016. (ECF 16-2, Ex. 2). These declarations/affidavits, and the regularly kept business records attached and described therein, are admissible and demonstrate that Plaintiff's Account was, in fact, sold and/or assigned to Defendant Cavalry SPV.

Plaintiff's argument that these documents fail to show that the right to arbitrate (as opposed to the mere right to collect payment on the account) was assigned to Defendant Cavalry SPV is also without merit. Under South Dakota law and, in particular, South Dakota's adoption of the Uniform Commercial Code, S.D. Codified Laws 57A-9-101 *et seq.*, the assignment of an account implicates and necessarily includes the rights as provided for in the terms of the original agreement between the account holder and the assignor of the account. Specifically, under § 57A-9-102(2), the term "account" means, in relevant part, "a right to payment of a monetary obligation . . . (vii) arising out of the use of a credit or charge card." Further, § 57A-9-404(a) provides that "the rights of an assignee are subject to: (1) all terms of the agreement between the account debtor and assignor . . . ." As such, under South Dakota's applicable law, an assignment of an account necessarily includes, not only the right to recover the amounts owed, but also the rights contained in the governing contract.[8] In this case, this means the right to compel arbitration follows the assignment of the account. Therefore, Plaintiff's challenge to the assignment of the right to compel arbitration fails.

### *Defendant Cavalry PS Can Invoke the Arbitration Agreement*

Plaintiff next argues that Defendant Cavalry PS, who is neither an assignee nor a signatory to the purported 2013 Card Agreement, lacks standing to enforce the Arbitration Provision therein. In support of this argument, Plaintiff essentially contends that Defendants have not shown that Defendant Cavalry PS is a third-party beneficiary of the card agreements. This argument misses the mark by ignoring the plain language of the Arbitration Provision. In

---

[8] Although Plaintiff does not contest that South Dakota law applies here, Pennsylvania's adoption of the UCC is nearly identical. *See* 13 Pa. C.S. § 9102(a)(vii); 13 Pa. C.S. § 9404(a)(1). Further, numerous courts that have addressed this issue have concluded that the purchase of an account or a receivable right to payment provides the assignee the same rights of the underlying contract that were held by the assignor. *See Stratton v. Portfolio Recovery Associates, LLC*, 706 F. App'x 840, 845-46 (6th Cir. 2017); *Martin v. Cavalry SPV I, LLC*, 2014 WL 1338702, at *5-6 (E.D. Ky. Mar. 31, 2014); *Systran Financial Servs. Corp. v. Giant Cement Holding, Inc.*, 252 F. Supp. 2d 500, 503-05 (N.D. Ohio 2003); *GMAC Commercial Credit LLC v. Springs Industries, Inc.*, 171 F. Supp. 2d 209, 214 (S.D.N.Y. 2001).

particular, the Arbitration Provision provides that Defendant Cavalry SPV (the assignee) may compel arbitration not only in relation to claims against it, but also in relation to "[c]laims made by or against anyone connected with us or you . . . such as . . . an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee." Here, Defendant Cavalry PS is an affiliated company of Defendant Cavalry SPV and acts as Defendant Cavalry SPV's servicing/collection representative in relation to the accounts it purchases. Indeed, Plaintiff has alleged as much in his complaint. Specifically, in the complaint, Plaintiff alleges that "Cavalry SPV engaged Cavalry PS to collect the accounts here in issue." (Compl. ¶ 13). Plaintiff also specifically alleges that "Cavalry SPV is responsible for the acts of its collector, Cavalry PS." (*Id*. at ¶14). Under the plain terms of the Arbitration Provision, Defendant Cavalry SPV may elect to have Plaintiff's claims against its affiliate, Defendant Cavalry PS, arbitrated as well, and has elected to do so here.[9] Plaintiff's argument to the contrary, therefore, is without merit.

**CONCLUSION**

For the reasons stated herein, Defendants' motion to compel arbitration is granted. An Order consistent with this Memorandum Opinion will follow.

NITZA I. QUIÑONES ALEJANDRO, J.

---

[9] As noted above, Plaintiff does not argue that his underlying dispute/claim does not fall within the scope of the Arbitration Provision.